## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**SHANNON BAUM,**
        **Plaintiff,**

**v.**                                                                    **No.  13-CV-01060 RHS/ACT**

**OFFICER MICHELLE ORTEGA, OFFICER MARTIN VIGIL,**
**OFFICER GREG ESPARZA, and JOHN DOES 1 THROUGH 10**
**in his/her official capacity as employees/law enforcement officer of**
**Espanola City Police Department, ESPANOLA POLICE**
**DEPARTMENT, a Department of the City of Espanola,**
**State of New Mexico; and THE CITY OF ESPANOLA, State of**
**New Mexico, County of Rio Arriba, State of New Mexico,**
        **Defendants.**

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY
## JUDGMENT AGAINST PLAINTIFF SHANNON BAUM

**COME NOW** the Defendants Officer Michelle Ortega, Officer Martin Vigil, Officer

Greg Esparza, John Does 1 through 10, Espanola Police Department and the City of Espanola

("City of Espanola Defendants"), by and through their attorneys of record Basham & Basham,

P.C., (Mark A. Basham) and hereby respectfully submit Defendants' Motion for Partial

Summary Judgment Against Plaintiff Shannon Baum.  Opposing counsel was contacted for his

concurrence to this motion, and he does/does not concur with this motion.

## INTRODUCTION

On October 10, 2013, Plaintiff Shannon Baum filed her Civil Complaint for Deprivation

of Civil and Constitutional Rights, Common Law Torts, and Statutory Rights.   [DOC 1]

Plaintiff's sole cause of action in this suit is a Claim Against All Defendants for Deprivation of

Civil Rights Under 42 U.S.C. § 1983.   [DOC 1, ¶¶ 34-43]   Under this § 1983 claim, the

Complaint alleges Fourteenth and Eighth Amendment violations in connection with Shannon

Baum's arrest and subsequent detention by the City of Espanola Defendants on June 7, 2011.

However, Defendant Michelle Ortega's arrest of Shannon Baum was supported by probable cause.  In addition, Defendant Greg Esparza did not violate Ms. Baum's clearly established constitutional rights when placing a "spit hood" over her head following the arrest.  Qualified immunity applies to these individual Defendants' discretionary acts.  Finally, Plaintiff's voluntary denial of medical treatment obviates her Fourteenth or Eighth Amendment claims.  Since no genuine issues of material fact exist, partial summary judgment must be granted in Defendants' favor, dismissing with prejudice Plaintiff Shannon Baum's claims for unlawful arrest and seizure, excessive force and denial of medical treatment.

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On June 7, 2011, Officer Michelle Ortega went to the car wash located at 626 La Joya St. in Espanola to clean out her patrol car.  See Deposition of Michelle Ortega: p. 17, lines 9-13, attached hereto as Exhibit A.

2.      Officer Ortega was then informed by Martin Gonzalez, a car wash employee, that a customer appeared intoxicated at one of the car wash's bays.  Exhibit A: p. 17, lines 20-25; p. 18, lines 1-6; p. 19, lines 2-5.

3.      Officer Ortega saw Shannon Baum drive her vehicle to the vacuum cleaner area, approached her and explained why she was there.  Exhibit A: p. 19, lines 6-10, 22-24.

4.      Shannon Baum has admitted to drinking a half pint of Vodka on June 7, 2011 before coming to the carwash and while at the carwash.  See Deposition of Shannon Baum: p. 24, lines 15-20; p. 25, lines 13-17; p. 26, lines 8-19, attached hereto as Exhibit B.

5.      Ms. Baum admitted that she said "Fuck this!" to Officer Ortega as she jumped into her car and attempted to start the ignition.  Exhibit B: p. 37, lines 4-7.  Exhibit A: p. 23, line 25; p. 24, lines 1-2.

6.      In this regard to this specific encounter, Ms. Baum admitted to resisting an officer.  Exhibit B: p. 37, lines 8-10.

7.      As Ms. Baum tried to turn the ignition, Officer Ortega was trying to get Baum's car keys.  Exhibit A: p. 26, line 25; p. 27, lines 1-18.

8.      A struggle then ensued, and Ms. Baum landed on top of Officer Ortega outside the car.  Exhibit A: p. 27, lines 19-25; p. 28, lines 1-25; p. 29, lines 1-22.

9.      Ms. Baum admitted that she got into a scuffle or fight with Officer Ortega. Exhibit B: p. 48, lines 12-14.

10.      Ms. Baum admitted that she held Officer Ortega in a bear hug.  Exhibit B: p. 68, lines 13-20; p. 71, lines 14-15.

11.      During this scuffle, Officer Ortega was able to place a handcuff on one of Ms. Baum's wrists.  Exhibit A: p. 46, lines 10-23.

12.      During this scuffle, Ms. Baum attempted to reach for Officer Ortega's firearm, screaming "I am going to fucking kill you with your own gun, you bitch."  Exhibit A: p. 31, lines 6-8, 13-15; p. 34, lines 16-25; p. 52, lines 19-25.

13.      During this scuffle, Officer Michelle Ortega maced Ms. Baum one time.  Exhibit A: p. 31, line 24.

14.      Since she already knew Officer Ortega had been taken away by ambulance, Ms. Baum has no personal knowledge of who else allegedly maced her.  Exhibit B: p. 28, line 25; p. 29, lines 1-25; p. 30, lines 1-8.

15.      Officer Greg Esparza did not mace Shannon Baum during her arrest.  See Deposition of Greg Esparza: p. 19, lines 16-17, attached hereto as Exhibit C.

16.     A spit hood is used whenever people spit at law enforcement personnel.  Exhibit A: p. 16, lines 15-20.

17.     A spit hood cannot be tightened at its bottom since it lacks a cord of any kind. Exhibit A: p. 52, lines 11-18.

18.     Following her arrest, Officer Esparza placed Ms. Baum in the back of his patrol car, where she began to spit at the vehicle's partition and back window.  Exhibit C: p. 20, lines 11-25; p. 21, line 1.

19.     Following her arrest, Officer Esparza put a spit hood over Ms. Baum's head and face.  Exhibit C: p. 13, lines 21-25; p. 22, lines 1-6; p. 23, lines 14-19.

20.     While at the Espanola Detention Center, Officer Greg Esparza read aloud the New Mexico Implied Consent Act and asked Ms. Baum if she agreed to be tested.  Exhibit C:  p. 28, lines 21-25; p. 29, lines 1-6.

21.     Ms. Baum refused to be tested.  Exhibit C: p. 29, lines 2-6.

22.     While at the Espanola Detention Center, Ms. Baum expressly denied medical treatment in writing.  Exhibit B: p. 49, lines 1-25; p. 50, lines 1-8.  See also Exhibit 6 to the Deposition of Shannon Baum, attached hereto as Exhibit D.

23.     On June 7, 2011, Shannon Baum was a pretrial detainee and not a prisoner who had been convicted.

24.     On June 7, 2011, Shannon Baum was arrested for the following offenses: Aggravated Battery Upon Peace Officer; Disarming a Peace Officer; Resisting, Evading or Obstructing an Officer (2 Counts); and, Aggravated Driving While Under the Influence of Intoxicating Liquor or Drugs.  See Uniform Incident Report, attached hereto as Exhibit E.

## ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Once the party moving for summary judgment has made a prima facie showing of entitlement to such relief, the burden then shifts to the party opposing summary judgment to show that specific evidentiary facts exists which would require a trial on the merits.  *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Alder v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Id. citing Anderson* 477 U.S. at 248.

If the moving party meets this burden, then the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 256; *Adler,* 144 F.3d at 671, n.1.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).  Likewise, the non-moving party may not simply rest upon his or her pleadings to satisfy this burden.  *Anderson,* 477 U.S. at 256.  The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *FDIC v. Hulsey,* 22 F.3d 1472, 1481 (10th Cir. 1994).

### B.        QUALIFIED IMMUNITY

A police officer is entitled to raise qualified immunity as a defense if (1) he was performing a discretionary function and (2) he did not violate a clearly established constitutional or statutory right of which a reasonable person in his position would have known.  *Anderson v. Creighton,* 483 U.S. 635, 638-39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  In other words, if a police officer reasonably believed that his actions were lawful in light of clearly established law and based upon all information available to him at the time, then he shall be immune from liability.  *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).  His reasonable belief, however, will be tested under an objective, rather than a subjective, standard.  *Id.*

"The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.  …  Instead, for any court to reach a determination that a violation of clearly established law has taken place a "more particularized" inquiry is required.  The court must ask whether 'every reasonable official would have understood that *what he [did]* violate[d] that right.  …  To satisfy this standard, '[w]e do not require a case directly on point,' but neither may a district court deny immunity unless 'existing precedent [has] placed the statutory or constitutional question *beyond debate.*'"   *Kerns v. Bader,* 663 F.3d 1173, 1183 (10th Cir. 2011)(internal citations omitted).

However, the initial burden typically accorded to the moving party is shifted when the motion for summary judgment is based on qualified immunity.  *See, Koch v. City of Del City,* 660 F.3d 1228, 1238 (10th Cir. 2011).  Whenever a moving party asserts qualified immunity at the summary judgment phase, it is the non-moving party that bears the burden of showing that

(1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity.  *Id.; Lundstrom v. Romero,* 616 F.3d 1108, 1118 (10th Cir. 2010) *citing Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  *Koch,* 660 F.3d at 1228 (internal quotations and citations omitted).

### C.   UNLAWFUL ARREST AND SEIZURE

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009).  "In applying the Fourth Amendment's protections against unreasonable searches and seizures, the Supreme Court has recognized three types of police-citizen encounters:   consensual encounters, investigative detentions, and arrests."  *Koch,* 660 F.3d at 1238.  "Probable cause exists 'where facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing than an offense has been or is being committed.'"  *Marshall v. Columbia Lea Reg'l Hosp.,* 345 F.3d 1157, 1166 (10th Cir. 2003) *quoting Karr v. Smith,* 774 F.2d 1029, 1031 (10th Cir. 1985).  "Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested."  *Morris v. Noe,* 672 F.3d 1185, 1192 (10th Cir. 2012).

> A.   Aggravated battery upon a peace officer consists of the unlawful touching or application of force to the person of a peace officer with intent to injure that peace officer while he is in the lawful discharge of his duties.
>
> …

C.  Whoever commits aggravated battery upon a peace officer, inflicting great bodily harm, or does so with a deadly weapon or in any manner whereby great bodily harm or death can be inflicted, is guilty of a third degree felony.

NMSA (1978) § 30-22-25(A)&(C)

A.  Disarming a peace officer consists of knowingly:
  (1)   removing a firearm or weapon from the person of a peace officer when the officer is acting within the scope of his duties; or
  (2)   depriving a peace officer of the use of a firearm or weapon when the officer is acting within the scope of his duties.

NMSA (1978) § 30-22-27(A)

Resisting, evading or obstructing an officer consists of:
…
B.  intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him;
…
D.  resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.

NMSA 1978 § 30-22-1(B)&(D).

D.  Aggravated driving while under the influence of intoxicating liquor or drugs consists of a person who:
(1)   drives a vehicle in this state and has an alcohol concentration of sixteen one hundredths or more in the person's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle;
…
(3)   refused to submit to chemical testing, as provided for in the Implied Consent Act [66-8-105 NMSA 1978], and in the judgment of the court, based upon evidence of intoxication presented to the court, was under the influence of intoxicating liquor or drugs.

NMSA (1978) § 66-8-102(D)(1)&(3).

In the case at bar, the arrest was supported by probable cause in several respects.

On June 7, 2011, Shannon Baum was arrested for the following offenses:  Aggravated Battery Upon Peace Officer; Disarming a Peace Officer; Resisting, Evading or Obstructing an Officer (2 Counts); and, Aggravated Driving While Under the Influence of Intoxicating Liquor

8

or Drugs.  (Material Fact No. 20)  For the Aggravated Battery Charge, probable cause is evident since Plaintiff Baum admits to falling out of the vehicle with Officer Michelle Ortega and having a scuffle in which she held Officer Ortega in a bear hug.  (Material Fact Nos. 8-10)  For the Disarming a Peace Officer charge, the undisputed, material facts demonstrate that Plaintiff Baum reached for Officer Ortega's firearm during this scuffle and verbally threatened this Officer's life.  (Material Fact No. 12)  For the Obstruction charges, Plaintiff admitted to resisting Officer Ortega.  (Material Fact No. 6) Moreover, Plaintiff resisted her DWI arrest by jumping into her car and attempting to turn on the ignition during the field sobriety test.  (Material Facts Nos. 5, 7, 11)  Finally, ample evidence exists to support the Aggravated DWI charge. (Material Fact Nos. 1, 2, 3, 4, 17, 18)  Ample evidence exists to support the Obstruction charge.  Therefore, summary judgment is proper on qualified immunity grounds because the individual Defendants could have reasonably believed that Plaintiff Baum violated the law.

### D.    EXCESSIVE FORCE

"Qualified immunity shields government officials from liability were 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sisneros,* 685 F.Supp.2d at 1201 (D.N.M. 2010) *citing Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  "Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful."  *Fancher v. Barrientos,* p. 13, No. Civ. 11-118 LH/LAM (D.N.M. June 13, 2012) *citing Saucier v. Katz,* 533 U.S. 194, 206, 150 L.Ed.2d 272 (2001).

The question of whether the officers' use of force is objectively reasonable is analyzed in light of the facts and circumstances confronting the officers, without regard to their underlying

intent or motivation. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Factors to consider in evaluating the reasonableness of the amount of force used are (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396.

The reasonableness of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* The determination of reasonableness must allow for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation. *Id.* at 396-97.

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officers or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner,* 471 U.S. 1, 11 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if where feasible, some warning has been given." *Id.* at 11-12.

"A reasonable officer need not await the glint of steel before taking self-protective action; by then, it is often too late to take safety precautions." *Estate of Larsen ex. rel. Sturdivan v. Murr,* 511 F.3d 1255, 1260 (10th Cir. 2008).

### 2.    Application of law to case facts

The *Graham* factors all weigh in Defendants' favor.

The first *Graham* factor looks at the severity of the crime that formed the basis of the arrest.   Here, Plaintiff Baum was arrested for Aggravated Battery Upon Peace Officer; Disarming a Peace Officer; Resisting, Evading or Obstructing an Officer (2 Counts); and, Aggravated Driving While Under the Influence of Intoxicating Liquor or Drugs.   (Material Fact No. 20)  It is important to note that the Plaintiff herself admitted to being intoxicated, to holding Officer Michelle Ortega in a bear hug during and to resisting this Officer.  (Material Fact No. 18; Defendants' Material Facts Nos. 4, 6, 9, 10)

The second *Graham* factor delves into whether a plaintiff posed an immediate threat to officers and others.   Again, ample evidence supports this finding in Defendants' favor.   It is undisputed that Plaintiff Baum has admitted to being intoxicated, to holding Officer Michelle Ortega in a bear hug during and to resisting this Officer.  *Id.*  Moreover, the undisputed, material facts show that Ms. Baum attempted to grab Officer Ortega's firearm.  (Material Fact No. 12) By her violent and drunken actions, the individual Defendants could reasonably believe that their own safety as well as the safety of others were threatened.

The third *Graham* factor focuses on whether the plaintiff resisted arrest.   According to her own admission, Plaintiff resisted Officer Ortega.  (Material Fact No. 6)  The undisputed, material facts demonstrate that the Plaintiff resisted being handcuffed.  (Material Fact No. 11) And Plaintiff has already admitted to getting into a scuffle with Officer Ortega in which she held this Officer in a bear hug.  (Material Fact Nos. 8, 9, 10)  The undisputed, material facts show that Ms. Baum only received one mace application.  (Material Fact Nos. 13, 14, 15)  Finally Plaintiff Baum became uncooperative while inside the patrol car and began to spit.  (Material Fact No. 15)  A spit hood was then placed over Plaintiff's head and face, which cannot be tightened in any

way.  (Material Fact Nos. 13, 14, 16)  As a result, the force used [namely, the single mace application and the use of the spit hood] was proportionate to the circumstances.

The Defendants are entitled to qualified immunity on Plaintiff's excessive force claim.

### E.   FOURTEENTH & EIGHTH AMENDMENT VIOLATIONS

"[P]retrial detainees are protected under the Due Process Clause [Fourteenth Amendment] rather than the Eighth Amendment …"  *Olsen v. Layton Hill Mall,* 312 F.3d 1304, 1315 (10th Cir. 2002).  "[T]he due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner."  *County of Sacramento v. Lewis,* 423 U.S. 833, 849-50 (1998).

"The Court of Appeals for the Tenth Circuit has stated that 'to present a plausible right to relief …, it is particularly important … that the complaint make clear exactly *who* is alleged to have done *what* to *whom*."  *Serrano v. Martinez,* CIV 13-1123 JP/WPL (D.N.M. June 17, 2014) *citing Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008).  Complaint allegations must be affirmatively linked to individual defendants.  *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993).  To prevail on a § 1983 claim, a plaintiff must allege some kind of personal involvement by a defendant in the complained-of constitutional violation.  *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996).

No genuine issue of a material fact exists that Plaintiff Shannon Baum refused medical treatment while at the Espanola Detention Center.  (Material Fact No. 19)  As a pretrial detainee, (Material Fact No. 23), Plaintiff Baum cannot assert an Eighth Amendment claim for cruel and unusual punishment.  Furthermore, Plaintiff's constitutional claim for refusal of medical treatment cannot lie on 14th Amendment grounds because she signed the form for refusing medical treatment.

In addition, Plaintiff has never alleged an individual Defendant in connection with her denial of medical treatment claim.

Finally, the undisputed, material facts show that Plaintiff Baum cannot affirmatively link any individual Defendant to any constitutional violation associated with the additional macings she has alleged.

As a result, partial summary judgment must be granted in Defendants' favor for this claim.

**WHEREFORE**, the City of Espanola Defendants respectfully request that the Court grant partial summary judgment in their favor, and for such other and further relief that the Court deems is appropriate.

Respectfully submitted,

Basham & Basham, P.C.

*/s/ Mark A. Basham*
Mark A. Basham
2205 Miguel Chavez, Suite A
Santa Fe, New Mexico 87505
505-988-4575
mbasham@bbpcnm.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of October, 2014, I filed *Defendants' Motion for Partial Summary Judgment Against Plaintiff Shannon Baum* which caused all counsel of record to be served by electronic means or by US Mail, as more fully reflected on the Notice of Electronic Filing:

*/s/ Mark A. Basham*
Mark A. Basham