IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHANNON BAUM,

      Plaintiff,

v.                                                          No. CIV 13-1060 RB/KK

OFFICER MICHELLE ORTEGA, OFFICER
MARTIN VIGIL, OFFICER GREG EZPARAZA,
and JOHN DOES 1 through 10, In his/her official
capacity as employees/law enforcement officer of
Espanola City Police Department, ESPANOLA
POLICE DEPARTMENT, a Department of the City
of Espanola, State of New Mexico, and THE CITY
OF ESPANOLA, State of New Mexico, County of
Rio Arriba, State of New Mexico,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      Plaintiff Shannon Baum was arrested at a car wash after she drank a half pint of vodka and battered a police officer. She sued the police officers for using excessive force during her arrest and then violating her rights during detention. Defendants moved for summary judgment twice, on two distinct grounds. Having reviewed the parties' submissions and arguments, the Court **DENIES** the first motion for summary judgment (Doc. 23) and **GRANTS** the second motion (Doc.45).

      **I.**      **BACKGROUND**

      On a Tuesday evening in June 2011, Plaintiff Shannon Baum went to a car wash in Espanola, New Mexico. (Doc. 46 ¶ 1; Doc. 45 ¶¶ 1,3; Ex. E, Doc. 45-2.) Plaintiff admits that she drank half a pint of vodka at the car wash and while driving to the car wash. (Doc. 46 ¶3; Doc. 45 ¶ 1.) Defendant Officer Michelle Ortega was also at the car wash, cleaning out her

patrol car. (Doc. 45 ¶ 1.) A car wash employee advised Officer Ortega that one of the customers, namely Plaintiff, was visibly intoxicated. (Doc. 46 ¶ 2; Doc. 45 ¶ 1.) Officer Ortega approached Plaintiff and started performing a sobriety check. (Doc. 45-1 at 20:1-9.) Plaintiff initially complied. (*Id.*) After completing an eye check, Officer Ortega asked Plaintiff to step out of her car to perform a "walk and turn." (Doc. 45-1 at 23:15-20.) Plaintiff started to comply but then said, "F-ck this," jumped into her car, and turned on the ignition. (Doc. 46 ¶ 4; Baum Dep. 23:19-24:2, Doc. 45-1.)

In an attempt to stop Plaintiff from driving away, Officer Ortega reached into the car to grab the keys. (Doc. 46 ¶ 5; Doc. 45 ¶ 7.) Plaintiff fought back. (Doc. 46 ¶ 6.) In the ensuing struggle, Officer Ortega pulled Plaintiff out of the car. (Doc. 45 ¶ 8.) Officer Ortega admits that she maced Plaintiff at some point during the altercation. (Doc. 45 ¶ 13.) The parties agree that Plaintiff was maced at some point, but do not agree when the macing occurred.

Plaintiff's recollection of the macing differs greatly. Plaintiff does not dispute that she got into a physical fight with Officer Ortega. (Doc. 46 ¶ 8.) In fact, she describes how she was able to pin Officer Ortega in a "bear hug" from behind. (Doc. 46 ¶ 9.) She says that she did not release Officer Ortega until she heard sirens and the footsteps of approaching officers. (Doc. 46 ¶ 9.) At this point, as the other officers arrived, Plaintiff says she was maced for the first and only time. (Baum Dep. 19:19-25, Doc. 46-1.) She recalls being "continuously maced from all directions for 45 seconds to a minute after she was subdued." (Baum Dep. 19:19-25, Doc. 46-1.) Specifically, she alleges that she was maced by two officers, Defendant Officers Esparza and Vigil, while Officer Ortega was being treated by paramedics. (Doc. 46 ¶ 12.) Officers Esparza and Vigil maintain that Plaintiff was maced by Officer Ortega before they arrived and deny ever macing Plaintiff themselves. (Doc. 45 ¶ 15; Esparza Dep. 21:17-23, Doc. 45-1.)

After arresting Plaintiff, Defendant Officer Esparza placed a spit sock on her. (Doc. 45 ¶ 19.) Plaintiff admits that she was spitting in the patrol car and explains that she was spitting because of the mace in her mouth. (Doc. 46 ¶ 16.) She objected to the spit sock because she claims it aggravated the pain she was suffering due to the mace. (Doc. 46 at 1.)

Plaintiff alleges that she suffered further "humiliation" when she was taken to the detention center. (Doc. 46 at 2.) She continued to suffer from the aftereffects of the mace and requested to wash out her eyes. (Baum Dep. 34:13-14, Doc. 46-1.) She says that unknown officers took her to the showers. (*Id.* at 34:24-25.) Defendant Officer Esparza, who admits to being present, says that he, another officer, and two firefighters led her to the showers to wash out her eyes. (Esparza Dep. 27:8-20, Doc. 45-1.) He testified that she jumped into the shower with all her clothes on. (*Id.*) Plaintiff recalls that they made her take off her clothes before she got in the shower. (Baum Dep. 34:15-17, 35:4-6, Doc. 46-1.) In her brief, Plaintiff complains that the officers "leered" at her. (Doc. 46 at 2.) "Leering" suggests an unseemly element of sexual harassment. In her deposition, however, her primary complaint is that the officers were "laughing and poking fun and just being—just being mean" because she was screaming in the shower. (Baum Dep. 34:15-17, 35:4-6, Doc. 46-1.) The evidence Plaintiff submitted suggests that she felt angered and ridiculed, but not sexually harassed.

After the shower, Officer Esparza booked Plaintiff for driving while intoxicated, resisting arrest, and assaulting a peace officer. (Esparza Dep. 28:22-24, Doc. 45-1; Crim. Compl., Doc. 45-2.) The evidence shows that Plaintiff refused medical treatment for any injuries. (Doc. 45-1; Doc. 45 at 4.) Plaintiff eventually pled guilty to driving under the influence and to battering a peace officer. (Doc. 23-1.)

Plaintiff filed a complaint for violations of her Fourth, Eighth, and Fourteenth Amendment rights, for negligence and intentional infliction of emotional distress, and other claims under the New Mexico Tort Claims Act. (Compl., Doc. 1.) Upon an unopposed motion, the Court dismissed Counts 2 and 3 as time barred. (Doc. 10.) Next, Defendants moved for summary judgment on the grounds that Plaintiff's claims were barred by Supreme Court precedent. (Doc. 23.) Plaintiff opposed this motion. (Doc. 24.) Defendants then moved for summary judgment on qualified immunity grounds. (Doc. 45.) Plaintiff opposed this motion as well. (Doc. 46.) The Court will now consider both motions for summary judgment.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact "could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518. 559-60 (2006). If there is a genuine dispute of material fact, then the "facts must be viewed in the light most favorable to the nonmoving party . . . ." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

## III. DISCUSSION

### A. First Motion for Summary Judgment

Defendants argue that all of Plaintiff's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486-88 (1994). Plaintiff responds that *Heck* does not bar her claims because she is challenging the use of excessive force, not claiming false arrest. (Doc. 24.) The Court agrees.

In *Heck*, a state prisoner's claim for malicious prosecution, if meritorious, would necessarily have invalidated the lawfulness of his state criminal conviction. *Id.* The Supreme Court ruled that a state court prisoner could not use Section 1983 as a vehicle to challenge the constitutionality of his state court conviction. *Id.* Thus, for example, *Heck* bars lawfully convicted prisoners from bringing false arrest claims because false arrest requires an *un*lawful arrest. The Tenth Circuit explains that "the purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1094 (10th Cir. 2009) (quoting *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007)). Alternatively, where "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. at 487.

Notwithstanding *Heck*, a plaintiff can claim that a lawful arrest was conducted in an unlawful manner. *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999). As the Tenth Circuit explained, *Heck* does not bar a Fourth Amendment claim based on excessive force. *Id.* The Tenth Circuit reasoned that "[t]he state court's finding that [an arrestee] resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to

subdue him." *Id.* at 1126-27. Unlike the claims in *Heck*, excessive force claims do not challenge the lawfulness of the arrest and conviction.

As Plaintiff explains, "[t]he problem is not the justification for the arrest, but the excessive force inflicted after arrest." (Doc. 46 at 8). This argument is supported by the case law. *See Martinez v*, 184 F.3d at 1125; *Northington v. Jackson*, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (reasoning that the "unnecessary and wanton infliction of pain" can give rise to a claim of excessive force even where a prison disturbance justifies the use of force). Given the inapplicability of *Heck*, the Court denies Defendants' first motion for summary judgment.

### B. Second Motion for Summary Judgment

Defendants premise their second Motion for Summary Judgment on the doctrine of qualified immunity.[1] (Doc. 45.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

To determine whether qualified immunity applies, courts consider two questions. *See Pearson*, 555 U.S. at 236 (explicating the two-prong inquiry for qualified immunity). First, did the defendants' actions violate the plaintiff's constitutional rights? *See id.* Second, was the complained-of constitutional violation "clearly established" such that a reasonable officer would have known that his conduct was unlawful? *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). The plaintiff has the burden to show that the defendants are not protected by qualified immunity. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). When considering qualified

---

[1] Defendants assume, and so will the Court, that Plaintiff named Defendant Officers Ortega, Vigil, and Esparza in their individual capacities.

immunity on summary judgment, courts must take care to view the facts in the light most favorable to the plaintiff. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

   *1. Excessive Force*

Plaintiff complains that the Defendant Officers used excessive force by macing her and by placing a spit sock on her. Claims that law-enforcement officers used excessive force are governed by the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014). Courts must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (quoting same). The three factors courts examine are (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1249 (10th Cir. 2013) (citing *Graham*, 490 U.S. at 396).

Based on the undisputed facts, the Defendant Officers were justified in using some force here. First, Plaintiff admittedly engaged in at least three serious crimes: driving while intoxicated, evading a peace officer, and battering a peace officer. Second, Plaintiff was a threat to the safety of others and the police officers. Earlier, she attempted to drive away even though she was under the influence. Moreover, she was a threat to the officers. When the responding officers arrived on the scene, Plaintiff had Officer Ortega pinned from behind. (Baum Dep. 39:7-14, Doc. 46-1.) Finally, indisputably, Plaintiff attempted to both resist and evade arrest. The *Graham* factors suggest that the Defendant Officers were justified in using some amount of force. In this case, the Defendant Officers used mace, a non-deadly tool, to subdue Plaintiff.

The parties dispute material facts—who maced Plaintiff and when. Defendants claim that Officer Ortega maced Plaintiff during the fight. Plaintiff claims that Officers Esparza and Vigil maced her immediately after the fight. Generally, such a dispute would prevent summary judgment. But here, where the Defendants have asserted qualified immunity, the Plaintiff's burden is greater. *See Mecham*, 500 F.3d at 1204 (explaining that plaintiffs have to burden to show that defendants are not entitled to qualified immunity). Even if the Defendant Officers violated Plaintiff's constitutional rights, Plaintiff proffered no evidence that her rights were violated under clearly established law. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The law does not "clearly establish" that the Defendant Officers' actions violated the Fourth Amendment. Certainly, using mace or pepper spray can constitute excessive force, especially when the suspect is non-threatening and non-evasive. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1289 (10th Cir. 2008) (excessive force where officers deployed pepper balls against a peaceful protestor lying prone on the ground) (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)); *Martinez v. N.M. Dep't of Pub. Safety*, 47 Fed. App'x 513, 516-17 (10th Cir. 2002) (excessive force where police used pepper spray against a misdemeanant who was neither a threat nor a flight risk). On the other hand, using pepper spray is not automatically excessive. *See Gargan v. Gabriel*, 50 F. App'x 920, 923 (10th Cir. 2002) (dismissing plaintiff's constitutional claims despite his allegation that officers sprayed him "4 times with 4 whole cans of pepper spray while he was unarmed"). The determination has to be based on the facts of each case.

Significantly, the Court could find no law that condemns using pepper spray against a suspect who, like Plaintiff, was both a threat and a flight risk. In *Mecham*, the Tenth Circuit approved two officers' use of pepper spray when an argumentative traffic violator refused to exit her vehicle. *See Mecham*, 500 F.3d at 1206. The threat that Plaintiff posed, an intoxicated belligerent who was not yet in custody, was surely greater than the plaintiff in *Mecham*, an obstinate traffic violator seated in her car. The law would not give a reasonable officer in the Defendant Officers' positions notice that macing Plaintiff violated constitutional principles.

Because Plaintiff could not meet her two-part burden, the Defendant Officers are entitled to qualified immunity. "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau*, 543 U.S. at 198. Accordingly, the Defendant Officers are entitled to summary judgment on the claim that macing Plaintiff violated her constitutional rights.

Similarly, employing the spit sock did not violate Plaintiff's rights. Spit socks are intended to prevent suspects from spitting on police officers. (Ortega Dep. 52:14-15.) Plaintiff admits that she was spitting and screaming while she was in the patrol car. (Baum Dep. 41:15-25, Doc. 46-1.) As a result, the Officers put a spit sock on her. Plaintiff says that this exacerbated her injuries, but when Defendants later offered her medical treatment, she refused. (Doc. 45-1; Doc. 45 at 4.) This suggests that she was not unduly concerned about her injuries.

2. *Fourteenth Amendment and Eighth Amendment Claims*

Plaintiff claims that she was mistreated at the jail and detention center, in violation of the Fourteenth and Eighth Amendments. The nature of Plaintiff's claim is not clear.

9

Based on her deposition, it appears Plaintiff claimed that she was denied necessary medical treatment. (Baum Dep. 49:16-18, Doc. 45-1.) That argument is not clear based on her Complaint or her Response. In support of her claim, Plaintiff cites, without explanation, to *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). The cited page in *Olsen* discusses an Eighth Amendment claim for denial of medical attention. *Olsen*, 312 F.3d at 1315. Plaintiff proffered no evidence that she was denied medical attention. Instead, the evidence shows that Plaintiff was offered and refused medical treatment. (Doc. 45-1; Doc. 45 at 4.) The uncontroverted evidence shows that Plaintiff was not denied medical attention.

Plaintiff also cites, again without explanation, to *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). The cited pages in *Robbins* discuss a plaintiffs' failure to adequately plead a "danger creation" claim. *Robbins*, 519 F.3d at 1249-50. That theory of recovery creates an exception to the rule that the government cannot be held liable under Section 1983 for the acts of third parties. *See id.* at 1251 ("The 'danger creation' exception to this rule applies only when 'a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence.'"). Plaintiff does not allege that a third party caused her harm. The Court does not see why the danger creation theory is helpful here.

Finally, Plaintiff challenges the mistreatment and humiliation she suffered based on the shower incident. (Doc. 46 at 2.) Plaintiff's main complaint about the shower incident appears to be that the officers were "just being mean" when they laughed while she was in pain. (Baum Dep. 35:4-6, Doc. 46-1.) At this stage of the criminal justice system, before she was booked (Esparza Dep. 28:22-24, Doc. 45-1), Plaintiff's claims are governed by the Fourth Amendment. *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) ("[T]he Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee detained

*without a warrant* and *prior to* any probable cause hearing.") (inner quotations omitted). Plaintiff never alleges that the shower incident constituted an unreasonable search or seizure, only that it was "humiliating." (Doc. 46 at 2.) Additionally, beyond the inapposite cases cited above, Plaintiff offers no evidence that her rights were violated in contravention of clearly established law.

Plaintiff failed to notify the Defendants of her claims and failed to meet her burden to overcome qualified immunity. Defendants are entitled to summary judgment on any claims Plaintiff alleged regarding her time in the jail and detention center.

### 3. *Municipal Liability*

Plaintiff sued the City of Espanola, the Defendant Officers in their official capacities, and the Espanola Police Department. The Court will consider all of these Defendants to be part of the same municipal liability claim. The Espanola Police Department is not a separate suable entity under Section 1983. *See Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381 (10th Cir. 1992). Additionally, official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks omitted). Plaintiff's theory for liability is that the City is liable under the doctrine of respondeat superior. (Doc. 1 ¶ 43.) However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Therefore, Defendants are entitled to judgment in their favor for the claims against the City of Espanola, the Espanola Police Department, and the Defendant Officers in their official capacities.

## IV. CONCLUSION

In sum, Plaintiff successfully opposed Defendants' first motion for summary judgment related to Supreme Court precedent. However, Plaintiff was not able to defeat Defendant's second motion for summary judgment. She could not meet the two-prong burden to overcome the Defendants' qualified immunity for the arrest and for the jail incidents. Finally, Plaintiff cannot hold the City or the Police Department liable under Section 1983 with a respondeat superior claim.

**THEREFORE**,

**IT IS ORDERED** that Defendants' first motion for summary judgment (Doc. 23) is **DENIED**; and

**IT IS FURTHER ORDERED** Defendants' second motion for summary judgment (Doc.45) is **GRANTED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**